UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| JORGE E. REZA,<br><br>Plaintiff,<br><br>v.<br><br>HEALTH STREET, a dba of SANSEI, INC., a foreign corporation, LABORATORY CORPORATION OF AMERICA, a foreign corporation, and JOHN DOES 1–10,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [13] DEFENDANT LABORATORY CORPORATION OF AMERICA'S MOTION TO DISMISS AND [16] DEFENDANT HEALTH STREET'S MOTION TO DISMISS**<br><br>Case No. 2:25-cv-00897<br><br>District Judge David Barlow |

Before the court is Health Street, a dba of Sansei, Inc.'s ("Health Street") and Laboratory Corporation of America's ("Labcorp") (collectively, "Defendants") Motions to Dismiss Plaintiff Jorge E. Reza's Complaint.[1] For the reasons stated below, the court grants both motions to dismiss.[2]

## BACKGROUND

This dispute arises from a paternity action before the Third District Court of Utah ("Paternity Action").[3] Mr. Reza initiated the Paternity Action after an at-home paternity test showed that he is the father of E.A., a child born to Gezalle Avila.[4] When Mr. Reza learned the

---

[1] Def. Labcorp's Mot. to Dismiss ("Labcorp MTD"), ECF No. 13, filed Oct. 15, 2025; Def. Health Street's Mot. to Dismiss ("Health Street MTD"), ECF No. 16, filed Oct. 15, 2025.
[2] Because Defendants' motions map onto each other without material variation, the court addresses Defendants' arguments together unless otherwise indicated.
[3] Compl. ¶¶ 11, 27, 42–76, ECF No. 2-2 (Ex. 2), filed Oct. 8, 2025.
[4] *Id.* ¶¶ 9, 11–12; Labcorp MTD 1–2; Health Street MTD 2–3.

at-home test was insufficient to establish paternity in a court, he contacted Health Street and paid for a paternity test, which was performed by Labcorp.[5]

In October 2021, Ms. Avila brought a child to be tested ("Minor"), and Labcorp followed its usual verification procedures, including collecting the child's fingerprint, birth certificate and social security card.[6] Labcorp also took a photo of Minor.[7] The results from the paternity test excluded Mr. Reza as Minor's father.[8] When Mr. Reza compared Minor's photo with those he had already seen of E.A., he discovered that the child Ms. Avila had brought in for the paternity test was not E.A.[9]

Mr. Reza persisted with his Paternity Action and was adjudicated to be E.A.'s father in August 2024.[10] According to Mr. Reza, he would have received that adjudication years earlier "[b]ut for the false paternity test results."[11] Mr. Reza filed a complaint against Health Street and Labcorp based on those results in the Third District Court of Utah, and the case was removed to federal court.[12]

**STANDARD**

"Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to the plaintiff, lacks enough facts to state a claim to relief that is plausible on its face."[13] "In evaluating a motion to dismiss, the court must take as true all well-pleaded facts, as

---

[5] Compl. ¶¶ 13–14.
[6] Id. ¶¶ 25, 26, 29; Labcorp MTD, Ex. 1.
[7] Id. ¶ 29.
[8] Id. ¶ 27.
[9] Id. ¶¶ 25–28.
[10] Id. ¶¶ 35–36.
[11] Id. ¶ 36.
[12] Id. ¶¶ 42–76; Notice of Removal, ECF No. 2, filed Oct. 8, 2025.
[13] *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019) (quoting *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 764 (10th Cir. 2019)).

distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings."[14]

However, a "complaint cannot rely on labels or conclusory allegations—a 'formulaic recitation of the elements of a cause of action will not do.'"[15] Instead, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[16] "When analyzing plausibility, plaintiff's allegations are 'read in the context of the entire complaint' and a plaintiff need only 'nudge' their claim 'across the line from conceivable to plausible.'"[17]

Generally, "a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings."[18] "However, notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, 'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"[19]

## DISCUSSION

Defendants argue that Plaintiff's causes of action for negligence, negligent infliction of emotional distress, breach of fiduciary duty, negligent misrepresentation, and breach of implied-

---

[14] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1131 (10th Cir. 2024) (quoting *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021)) (also quoting *Ruiz v. McDonald*, 299 F.3d 1173, 1181 (10th Cir. 2002)) (cleaned up).

[15] *Greer v. Moon*, 83 F.4th 1283, 1292 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 2521 (2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[16] *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

[17] *Greer*, 83 F.4th at 1292 (quoting *Chilcoat* v. *San Juan Cnty.*, 41 F.4th 1196, 1218 (10th Cir. 2022)) (also quoting *Twombly*, 550 U.S. at 570) (cleaned up).

[18] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999)).

[19] *Id.* (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

in-fact contract should be dismissed. Plaintiff "does not oppose dismissal of the fiduciary-duty claim."[20] Therefore, the court need not consider it but addresses the remaining claims in turn.

## I.     Negligence

Defendants contend that Mr. Reza's negligence claim should be dismissed for failure to establish the threshold requirement of a duty.[21] In response, Mr. Reza argues duty exists because of Defendants' allegedly "affirmative undertakings" that created a foreseeable risk of his alleged injury.[22]

To prevail on a negligence claim, a "plaintiff must establish: (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) that the breach of duty was the proximate cause of the plaintiff's injury, and (4) that the plaintiff in fact suffered injuries or damages."[23] "The determination of whether a legal duty exists is a purely legal question."[24]

Utah courts analyze the following five factors to determine whether a defendant owes a duty to a plaintiff:

> (1) whether the defendant's allegedly tortious conduct consists of an affirmative act or merely an omission; (2) the legal relationship of the parties; (3) the foreseeability or likelihood of injury; (4) public policy as to which party can best bear the loss occasioned by the injury; and (5) other general policy considerations.[25]

---

[20] Pl.'s Opp'n to Labcorp Mot. to Dismiss ("Opp'n I") 14, ECF No. 26, filed Nov. 26, 2025; Pl.'s Opp'n to Health Street Mot. to Dismiss ("Opp'n II") 14, ECF No. 27, filed Nov. 26, 2025.

[21] Labcorp MTD 4–5; Health Street MTD 5–6. *See also Mower v. Baird*, 2018 UT 29, ¶ 16, 422 P.3d 837 ("The threshold question in a negligence claim is whether the defendant owed a duty to the plaintiff.").

[22] Opp'n I at 4–5.

[23] *Torrie v. Weber Cnty.*, 2013 UT 48, ¶ 9, 309 P.3d 216 (internal quotation marks and citation omitted).

[24] *Herland v. Izatt*, 2015 UT 30, ¶ 9, 345 P.3d 661 (cleaned up).

[25] *Mower*, 2018 UT 29, ¶ 17 (internal quotation marks omitted) (quoting *B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 5, 275 P.3d 228).

"Not every factor is created equal, however."[26] And "[s]ome factors are featured heavily in certain types of cases, while other factors play a less important, or different, role."[27]

### A. Defendants' conduct does not qualify as misfeasance and no special relationship exists.

The court addresses the first two factors together because they are "interrelated."[28] "The first factor turns on the common distinction between acts and omissions."[29] This is because "misfeasance, or active misconduct working positive injury to others, typically carr[ies] a duty of care" while nonfeasance does not.[30] Nonfeasance is defined as "passive inaction, a failure to take positive steps to benefit others, or to protect them from harm not created by any wrongful act of the defendant."[31] If "a duty isn't established under the first factor, as in cases of nonfeasance, the second factor can be 'used to impose a duty where one would otherwise not exist."[32] In other words, a duty attaches to acts of misfeasance—affirmative acts—but not to nonfeasance, unless a special legal relationship exists.[33]

In *Graves v. North Eastern Services, Inc.*, the Utah Supreme Court analyzed the distinction between misfeasance and nonfeasance and ultimately held that a service provider did not have a duty to prevent the sexual assault of the plaintiff by its employee.[34] The court noted that "plaintiffs' core complaint is with [the service provider's] omissions or failures—in *not* performing an employment background check" and "in *not* providing training and supervision"

---

[26] *Id.* (quoting *Jeffs*, 2012 UT 11, ¶ 5). *See also Boynton v. Kennecott Utah Copper, LLC*, 2021 UT 67, ¶ 21, 500 P.3d 847 (stating that Utah courts "do not treat all five factors as equally important").
[27] *Herland*, 2015 UT 30, ¶ 13 (citation omitted).
[28] *See Mower*, 2018 UT 29, ¶ 19 (citation omitted).
[29] *Boynton*, 2021 UT 67, ¶ 26.
[30] *Id.* (quoting *Jeffs*, 2012 UT 11, ¶ 7).
[31] *Id.* ¶ 26 (quoting *Jeffs*, 2012 UT 11, ¶ 7).
[32] *Id.* (internal quotation marks and citation omitted).
[33] *See id.*
[34] *Graves v. N.E. Servs. Inc.*, 2015 UT 28, ¶¶ 27–29, 345 P.3d 619.

of the relevant employees.[35] Although the court found there were certain affirmative acts undertaken by the service provider that had induced the plaintiff to go where the assault occurred, it held that those "affirmative acts are a basis for imposing a duty in the performance of those acts, not for a broader duty to undertake additional measures aimed at preventing the sexual assault by a third party."[36]

Here, Mr. Reza's allegations resemble those in *Graves* because they describe omissions, not affirmative acts.[37] He alleges that Defendants had a duty to ensure Ms. Avila brought the correct child for testing by going beyond the verification procedures it followed and that "Labcorp failed to undertake reasonable precautions before issuing a legal exclusion."[38] However, an alleged failure to do more than what was required is nonfeasance, not misfeasance.[39] Mr. Reza alleges no facts showing that Defendants did *less* than was required for a valid paternity test. On the contrary, he admits that "[t]he Complaint does not allege that Labcorp misread the DNA," and concedes that "Labcorp performed *legal* parentage testing."[40] Furthermore, it is undisputed that Labcorp collected Minor's birth certificate, fingerprints, and social security card as additional verification documents.[41] Thus, Mr. Reza has not alleged facts

---

[35] *Id.* ¶ 27 (emphases supplied).

[36] *Id.* ¶ 29.

[37] Although Mr. Reza attempts to characterize his allegations against Defendants' conduct as affirmative acts, he merely describes lawful elements of the testing procedure Defendants undisputedly followed. Thus, the court is unpersuaded by this argument. *See* Opp'n II at 4–5; Compl. ¶ 43 (listing numerous ways Defendants "breached their duties" by "[f]ailing" to undertake actions that exceed their statutory duty).

[38] Opp'n I at 6; Compl. ¶ 43.

[39] Mr. Reza

[40] Opp'n I at 4 (emphasis added). Mr. Reza also argues in his Opposition that Labcorp's affiliation with AABB, a "nationally recognized accrediting body for legal parentage/relationship testing," imposes "industry standards" that Labcorp should have followed. *See* Opp'n I at 6–7. However, this argument is unsupported by legal authority or even AABB sources, and it falls outside the pleadings because it is not raised in the Complaint. Consequently, the court does not consider it. *See United States v. Gallegos*, 459 Fed. App'x 714, 716 (10th Cir. 2012) (stating that "a district court cannot consider material outside of a compliant when considering whether to dismiss a claim under Rule 12(b)(6)").

[41] *See* Labcorp MTD, Ex. 1.

to support misfeasance, and Defendants' failure to "undertake additional measures" to verify Minor's identity can amount to no more than nonfeasance.[42]

The next question, then, is whether a special legal relationship exists "to impose a duty" on Defendants.[43] "Special relationships arise when one party assumes responsibility for the safety of another or their opportunities for self-protection."[44] "For example, innkeepers, guardians, and common carriers typically have special relationships with those in their care."[45] Additionally, courts may consider whether there are differences between the parties in "[a]ge, knowledge, influence, bargaining power, sophistication, and cognitive ability" and "intervene by creating a duty on the advantaged party" "[w]here a disparity in one or more of these circumstances distorts the balance between the parties in a relationship to the degree that one party is exposed to unreasonable risk."[46]

Here, no such disparity exists, and Mr. Reza does not allege that Defendants assumed a responsibility for his safety. Although Defendants had more expertise in the realm of genetic testing, Mr. Reza had the advantage in being able to identify E.A. because he could recognize him, as demonstrated when he compared his photograph with Minor's.[47] Thus, there is no special relationship between Mr. Reza and the Defendants. Therefore, the first two factors indicate Defendants do not have a duty to Mr. Reza.[48]

---

[42] *Graves*, 2015 UT 28, ¶ 29.

[43] *Jeffs*, 2012 UT 11, ¶ 5.

[44] *Boynton*, 2021 UT 67, ¶ 29.

[45] *Id.* ¶ 29.

[46] *Moore v. Smith*, 2007 UT App 101, ¶ 34, 158 P.3d 562 (quoting *Yazd v. Woodside Homes Corp.*, 2006 UT 47, 143 P.3d 283).

[47] *See, e.g.*, *Johnson v. City of Cheyenne*, 99 F.4th 1206, 1221 (10th Cir. 2024) (describing how even "some familiarity" between a witness and a subject supports the reliability of the witness because "*any* prior acquaintance with another person substantially increases the likelihood of an accurate identification") (quoting *Haliym v. Mitchell*, 492 F.3d 680, 706 (6th Cir. 2007)).

[48] *Boynton*, 2021 UT 67, ¶ 18.

**B.      Mr. Reza has not plausibly alleged that his injuries were foreseeable.**

Likewise, the next factor weighs against a duty. "Foreseeability relates to the general relationship between the alleged tortfeasor and the victim and the general foreseeability of harm."[49] Because duty is a question of law, "foreseeability in duty analysis is evaluated at a broad, categorical level."[50] Therefore, "[t]he appropriate foreseeability question for duty analysis is whether a category of cases includes individual cases in which the likelihood of some type of harm is sufficiently high that a reasonable person could anticipate a general risk of injury to others."[51]

Here, the likelihood of injury from deception or mistaken identity alleged was not high enough to impose a common law duty. Although Mr. Reza argues the statutory chain-of-custody procedures for genetic testing speak to the foreseeability of a general risk, their existence as safeguards also cuts against the likelihood of risk.[52] Those steps included collecting the name, fingerprints, photograph, birth certificate, and social security card of the individual being tested, as week as the date of collection and name of the individuals conducting the testing.[53] Thus, the likelihood of Mr. Reza's injuries was not "sufficiently high" to be foreseeable.[54]

---

[49] *Id.* ¶ 31 (internal quotation marks and citations omitted).

[50] *Jeffs*, 2012 UT 11, ¶ 25.

[51] *Boynton*, 2021 UT 67, ¶ 31.

[52] Opp'n II at 6–7.

[53] Utah Code § 81-5-504; Labcorp MTD 5–6.

[54] *Boynton*, 2021 UT 67, ¶ 31. Plaintiff also cites an Oklahoma Supreme Court case for the foreseeability proposition. *See Berman v. Laboratory Corp. of America*, 268 P.3d 68 (Okla. 2011). This single case reference from another state does not shed light on Utah law.

**C.      Policy considerations weigh against the imposition of a duty.**

The final two factors also favor Defendants.[55] Both factors address policy concerns by considering "who can best bear the loss" and asking "whether general policy considerations require a categorical decision removing duty from a class of cases."[56] Notably, the loss factor "doesn't refer to who has the financial resources to pay for the resulting damages."[57] "Instead, this factor considers whether the defendant is best situated to take reasonable precautions to avoid injury."[58] And "where a victim or some other third party is in a superior position of knowledge or control to avoid the loss in question," the "defendant is not in a position to bear the loss."[59]

Here, Mr. Reza was better positioned than Defendants to know the correct identity of E.A. and thereby avoid the loss. Mr. Reza's superior knowledge is demonstrated by his ability to determine that E.A. had not been tested by comparing the photograph taken by Defendants of Minor to those he already had of E.A.[60] Because children generally do not have official photographic identification, individuals who have previously seen the child—such as family and friends—are best able to verify the child's identity.[61] And since Mr. Reza requested the testing in the context of a paternity action, he could have taken legal steps such as a court order for Ms.

---

[55] The last two factors are "public policy as to which party can best bear the loss occasioned by the injury" and "other general policy considerations." *Mower v. Baird*, 2018 UT 29, ¶ 17, 422 P.3d 837 (cleaned up) (quoting *Jeffs*, 2012 UT 11, ¶ 5 n.2).

[56] *Boynton*, 2021 UT 67, ¶¶ 39, 44.

[57] *Id.* ¶ 39.

[58] *Jeffs*, 2012 UT 11, ¶ 30.

[59] *Id.*

[60] Compl. ¶ 29.

[61] *See, e.g.*, *Johnson v. City of Cheyenne*, 99 F.4th 1206, 1221 (10th Cir. 2024) (describing how even "some familiarity" between a witness and a subject supports the reliability of the witness because "*any* prior acquaintance with another person substantially increases the likelihood of an accurate identification") (quoting *Haliym v. Mitchell*, 492 F.3d 680, 706 (6th Cir. 2007)).

Avila to present E.A. for testing or attending the appointment himself in person to verify E.A.'s identity.[62] In short, Mr. Reza was better positioned than Defendants "to take reasonable precautions to avoid injury."[63]

Relatedly, other policy considerations cut against a finding of duty. Mr. Reza argues that Defendants' "no-duty theory" could never hold a paternity testing entity accountable, "regardless of how ineffective the verification process was or how inaccurate the resulting report became as a result."[64] Yet this argument is inconsistent with his own recognition that Labcorp's testing was not erroneous or improperly performed[65] and with Defendants' argument that public policy "does not favor imposing any *additional* duties" beyond those already in place.[66]

The Utah legislature has outlined instructions that genetic testing entities must follow for their testing to be "admissible without testimony" or "self-authenticating."[67] It is undisputed that Defendants followed the statutory requirements to establish a reliable chain of custody for genetic testing:

a) the names and photographs of the individuals whose specimens have been taken;
b) the names of the individuals who collected the specimens;
c) the places and dates the specimens were collected;
d) the names of the individuals who received the specimens in the testing laboratory;
e) the dates the specimens were received; and
f) the fingerprints of the individuals whose specimens have been taken.[68]

---

[62] Compl. ¶ 11.
[63] *Jeffs*, 2012 UT 11, ¶ 30.
[64] Opp'n II at 9.
[65] *See generally* Compl. *See also* Opp'n I at 4 ("The Complaint does not allege that Labcorp misread the DNA; it alleges that Labcorp performed *legal* parentage testing on the wrong child and nonetheless issued an official exclusion for [E.A.].") (emphasis added).
[66] Def. Health Street's Reply in Support of Mot. to Dismiss ("Health Street Reply") at 5, ECF No. 33, filed Dec. 30, 2025; Def. Labcorp's Reply in Support of Mot. to Dismiss ("Labcorp Reply") at 4, ECF No. 32, filed Dec. 29, 2025 (emphasis added).
[67] *See* Utah Code Ann. § 81-5-504.
[68] *Id.*

Beyond these items, Defendants also collected E.A.'s birth certificate, fingerprints, and her social security card.[69]

No Utah case law or statute places a duty on entities involved in paternity testing to take additional steps other than those Defendants took in verifying the identity of the individual being tested. Additionally, Defendants cite *Pyper v. Reil*, in which the Utah Court of Appeals declined to expand the duty of an escrow agent to detect and prevent third-party fraud.[70] In response, Mr. Reza states the case is factually distinct because it involves "an escrow agent in an arm's-length real estate transaction" and a "relationship-testing laboratory issuing a court-usable parentage report is not an escrow agent."[71] However, the transactions are not completely dissimilar, particularly given how Mr. Reza characterizes his relationship with Labcorp as "more appropriately characterized as a professional, arm's-length service arrangement."[72] And the principle articulated by Defendants in *Pyper* is applicable here where the court is also considering the scope of duty.[73] The plaintiff in *Pyper* asked the court to "extend the law regarding an escrow agent's fiduciary duty" by requiring "the affirmative obligation to detect and halt a potentially fraudulent transaction."[74] The court refused, concluding that Pyper had not met his burden to "demonstrate that it is appropriate to expand" a previously unrecognized

---

[69] Labcorp MTD, Ex. 1.
[70] *Pyper v. Reil*, 2018 UT App 200, ¶¶ 26–28, 437 P.3d 493.
[71] Opp'n I at 9.
[72] *Id.* at 14.
[73] *Pyper*, 2018 UT App 200, ¶ 20.
[74] *Id.* ¶¶ 20–24.

"affirmative obligation."[75] "Importantly," the court reasoned, "Utah has not recognized . . . the duty Pyper asks that [the court] recognize on appeal."[76]

Likewise, Mr. Reza asks the court to impose a duty that does not exist in Utah law. Neither Utah's legislature nor courts have established an affirmative obligation for paternity testing entities to detect fraud beyond what is outlined in the UUPA.[77] Because Mr. Reza has not articulated sufficient argument to override public policy concerns with imposing additional duties on paternity testing entities, this factor weighs against a duty.

In sum, there is no duty here according to the five-factor test. Additionally, no Utah statute or case has recognized the duty Plaintiff suggests. Accordingly, the negligence claim fails as a matter of law because Defendants do not owe a duty to Mr. Reza.

## II.    Negligent Infliction of Emotional Distress

Defendants next argue that the second cause of action for negligent infliction of emotional distress should be dismissed because Mr. Reza has not demonstrated the requisite illness or bodily harm.[78] Labcorp also asserts dismissal is appropriate because Mr. Reza has not alleged facts to establish that Labcorp should have realized its conduct involved unreasonable risk of causing distress.[79]

To prevail on a claim for negligent infliction of emotional distress ("NIED"), a plaintiff must establish that the actor "should have realized that his conduct involved an unreasonable risk

---

[75] *Id.* ¶¶ 20–28.

[76] *Id.* ¶ 24.

[77] Another example of an affirmative obligation Mr. Reza seeks to impose on Defendants is "heightened safeguards or material limitation disclosures" when the mother is not tested. *See* Opp'n I at 9. However, Utah law is clear that "[g]enetic testing of the birth mother of a child is not a condition precedent to testing the child and a man whose paternity is being determined." Utah Code Ann. § 81-5-614(3).

[78] Labcorp MTD 7–9; Health Street MTD 12–13.

[79] Labcorp MTD 7–9.

of causing the distress," that the actor "from facts known to him, should have realized that the distress, if it were caused, might result in illness or bodily harm," and that the distress is shown "by means of severe physical or mental manifestations."[80] Although "either physical or mental illness may support [an] NIED cause of action," the "emotional distress suffered must be severe."[81]

Here, the claim fails on two fronts. First, Mr. Reza has not demonstrated that Defendants "should have realized that [their] conduct"—following UUPA's verification procedures and surpassing them with additional required documents—"involved an unreasonable risk of causing [Mr. Reza's] distress."[82] In other words, a testing entity following proper protocols would not anticipate its actions causing distress.

Second, Mr. Reza has not adequately pled that his distress caused "severe physical or mental manifestations."[83] It is well-established in Utah law that "it is not enough for a plaintiff to merely allege emotional distress. Instead, she must prove that distress by means of severe physical or mental manifestations."[84] Of course, at the motion to dismiss stage, no evidence is required. But factual allegations sufficient to establish plausibility are necessary. Here, Mr. Reza offers no information about any illness or physical symptoms he suffers but merely summarily alleges he has "sustain[ed] severe emotional distress, mental trauma, mental suffering and grief,

---

[80] *Carlton v. Brown*, 2014 UT 6, ¶¶ 56–57, 323 P.3d 571 (quoting *Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 55, 116 P.3d 323).

[81] *Hansen v. Mtn. Fuel Supply Co.*, 858 P.2d 970, 975 (Utah 1993).

[82] *Carlton*, 2014 UT 6, ¶ 56.

[83] *Id.* ¶ 57; *Lester v. ConocoPhillips*, No. 4:18-cv-00022, 2021 WL 308222, at *5. *See also Hansen*, 858 P.2d at 975 ("Plaintiffs have not proffered any evidence indicating that their distress is sufficiently severe to constitute mental illness, nor do we have evidence that their distress has resulted in physical symptoms.").

[84] *Carlton*, 2014 UT 6, ¶ 57 (citing *Hansen*, 858 P.2d at 975).

characterized by illness or bodily harm."[85] Even at a motion-to-dismiss stage, "[u]nsubstantiated, conclusory allegations of severe emotional distress are insufficient to state a claim for NIED."[86] Therefore, the court concludes that Mr. Reza has not met the elements of an NIED claim and accordingly grants Defendants' motion to dismiss the claim.

## III.    Negligent Misrepresentation

Defendants next contend that Mr. Reza's fourth cause of action should be dismissed because he has not alleged facts to support the required elements of ignorance and reliance.[87]

Under Utah law, the elements of fraud are:

(1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that [the representor] had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to [the other party's] injury and damage.[88]

"The elements of negligent misrepresentation are similar to those of fraud except that negligent misrepresentation 'does not require the intentional mental state necessary to establish fraud.'"[89] Negligent misrepresentation may be established where a false representation is made "carelessly or negligently."[90]

---

[85] Compl. ¶ 53.

[86] *Osmond v. Litton Loan Servicing, LLC*, 1:10-cv-11, 2011 WL 1988403, at *4 (D. Utah May 20, 2011).

[87] Labcorp MTD 10–12.

[88] *Capozzoli v. Madden*, 2024 UT App 176, ¶ 40, 561 P.3d 727 (quoting *Larsen v. Exclusive Cars, Inc.*, 2004 UT App 259, ¶ 7, 97 P.3d 714).

[89] *Shah v. Intermountain Healthcare, Inc.*, 2013 UT App 261, ¶ 11, 314 P.3d 1079 (quoting *Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*, 713 P.2d 55, 59 n.2 (Utah 1986)).

[90] *Smith v. Frandsen*, 2004 UT 55, ¶ 9, 94 P.3d 919 (quoting *Jardine v. Brunswick Corp.*, 423 P.2d 659, 662 (Utah 1967)).

Here, Mr. Reza's belief that the test results were wrong defeats his negligent misrepresentation claim. Mr. Reza cannot show the requisite ignorance because he alleges that he "already knew that he was likely" the father of E.A. due to an at-home paternity test he took.[91] In response, Mr. Reza interprets the ignorance element as a requirement to have "actual, contemporaneous knowledge."[92] However, this argument is unsupported by any authority and contradicted by Mr. Reza's allegation that that he knew the wrong child was tested when the results were issued because "he compared the picture that was taken of the child by Defendants to other pictures he had received from [Ms. Avila's] family members."[93]

Moreover, Mr. Reza cannot show reliance on the allegedly wrong paternity results because he resisted them. In *DeBry v. Cascade Enterprises*, the Utah Supreme Court rejected a fraud claim because the movants "did not rely on those representations to their detriment; indeed, they did all that they could to resist them."[94] Likewise, Mr. Reza did not allow the test result to deter him from his paternity action and, in fact, alleged that he "continue[d] to fight to establish paternity" after he received the paternity results.[95] In response, Mr. Reza tries to distinguish *DeBry* by arguing its plaintiffs "were not induced into any detrimental action by the alleged representation" whereas he has been forced to engage in additional testing and legal work.[96] Yet even had Defendants detected the fraud, Mr. Reza still would have needed more testing since he

---

[91] Compl. ¶ 12.
[92] Opp'n I at 15.
[93] *Id.* 15–16; Compl. ¶¶ 28–29.
[94] *DeBry v. Cascade Enters.*, 879 P.2d 1353, 1358 (Utah 1994). Although this case addresses fraud rather than negligent misrepresentation, the element of reliance is the same for both causes of action. *See Capozzoli*, 2024 UT App 176, ¶ 40 ("The 'elements of negligent misrepresentation are similar to those of fraud except that negligent misrepresentation does not require the intentional mental state necessary to establish fraud." (citation omitted)); *Olsen v. Univ. of Phoenix*, 2010 UT App 327, ¶ 6, 244 P.3d 388 ("As to the fraudulent and negligent misrepresentation claims, both require reasonable reliance on a misrepresentation of material fact.").
[95] Compl. ¶ 40.
[96] Opp'n I at 17.

admits his at-home test was not admissible in court, and he still would have faced protracted litigation given the birth mother's alleged deception that suggested she was uncooperative.[97] For these reasons, the negligent misrepresentation claim fails as a matter of law and is dismissed.

## IV.    Breach of Implied-in-Fact Contract

Defendants next argue that the breach of implied-in-fact contract claim fails because Mr. Reza has not alleged facts sufficient to demonstrate a meeting of the minds and because an acceptance of payment without mutual assent does not create an implied-in-fact contract.[98] Mr. Reza responds that the exchange of payment between himself and Defendants had an implicit understanding of the "core purpose of the service" requested, which was "to obtain a legally reliable determination of whether [Mr. Reza] was the father of E.A."[99]

"A contract implied in fact is a contract 'established by conduct' and require[s] a meeting of the minds.'"[100] To prevail on an implied-in-fact contract claim, a plaintiff must show "(1) the defendant requested the plaintiff to perform work; (2) the plaintiff expected the defendant to compensate him or her for those services; and (3) the defendant knew or should have known that the plaintiff expected compensation."[101] Mr. Reza has not satisfied these elements.

Under Utah law, "the acceptance of payment without other terms [i]s insufficient" to create "an implied contract based on mutual assent."[102] In *Heideman v. Washington City*, the

---

[97] Compl. ¶ 12.

[98] Labcorp MTD 12–14; Health Street MTD 13–14.

[99] Opp'n I at 18–19; Opp'n II at 17–18.

[100] *In re Iron*, No. 21-4116, 2023 WL 8710653, at *4 (10th Cir. 2023) (per curiam) (applying Utah law) (quoting *Jones v. Mackey Price Thompson & Ostler*, 2015 UT 60, ¶ 44, 355 P.3d 1000. *See also Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1002 (Utah 1991) ("Therefore, for an implied-in-fact contract term to exist, it must meet the requirements for an offer of a unilateral contract. There must be a manifestation of the [offeror's] intent that is communicated to the [offeree] and sufficiently definite to operate as a contract provision.").

[101] *Uhrhahn Constr. & Design, Inc. v. Hopkins*, 2008 UT App 41, ¶ 18, 179 P.3d 808 (quoting *Davies v. Olson*, 746 P.2d 264, 269 (Utah Ct. App. 1987)).

[102] *Bergdorf v. Salmon Elec. Contractors Inc.*, 2019 UT App 128, ¶ 37, 447 P.3d 1265.

plaintiff was a developer who contended that because Washington City could not seek a higher rate of water impact fees than existed when the city accepted payment for the fees at a lower rate from the developer.[103] The court disagreed and concluded there could be no implied-in-fact contract because there was "no communication that would indicate any type of meeting of the minds."[104] Similarly, in *Bergdorf v. Salmon Electrical Contractors, Inc.*, a building owner seeking damages from a general contractor tried to overcome the lack of a signed, written contract by arguing they had established mutual assent through their conduct.[105] The court ruled against the owner and determined that "when mutual assent is based on conduct or performance, the law requires that words or actions of a party must be reasonably 'interpretable as indicating an intention to make a bargain with *certain terms or terms which reasonably may be made certain.*'"[106] Because there "was simply no communication between [the plaintiff] and [the defendant] that exhibits a meeting of the minds on any certain terms," the court held that no contract existed.[107]

Likewise, Mr. Reza has not demonstrated mutual assent for Defendants' alleged breaches—"failing to verify that the correct child was tested"; "failing to disclose the risks of a 'motherless' test"; and "issuing a false and misleading paternity report."[108] There is no alleged content of communication between himself and Defendants to support these expectations. At most, Mr. Reza alleges that he "contacted Health Street and paid for a paternity test to be

---

[103] *Heideman v. Washington City*, 2007 UT App 11, ¶¶ 3–9, 155 P.3d 900.
[104] *Id.* ¶¶ 25–27.
[105] *Bergdorf*, 2019 UT App 128, ¶¶ 34–42.
[106] *Id.* ¶ 37 (quoting *Heideman*, 2007 UT App 11, ¶ 25) (emphasis supplied).
[107] *Id.* ¶¶ 38, 42.
[108] Compl. ¶ 75.

performed by LabCorp."[109] But "the acceptance of payment without other terms [i]s insufficient" to create an implied contract.[110] Therefore, he has not alleged sufficient facts from which a reasonable factfinder could infer that Defendants intended to assume a duty to verify the identities of the samples' sources, counsel Mr. Reza about the various types of paternity tests, or require a sample from the birth mother.

In sum, Mr. Reza has not satisfied the elements of an implied-in-fact contract. As a result, the court dismisses the breach of implied-in-fact contract claim.

## ORDER

Accordingly, the court GRANTS Labcorp's Motion to Dismiss and Health Street's Motion to Dismiss.[111] Mr. Reza's claims against Labcorp and Health Street are DISMISSED WITHOUT PREJUDICE.

Signed April 1, 2026.

BY THE COURT

_____
David Barlow
United States District Judge

---

[109] Compl. ¶ 14.
[110] *Bergdorf*, 2019 UT App 128, ¶ 37.
[111] ECF Nos. 13, 16.